536 So.2d 1278 (1988)
Gail M. LOVE, Plaintiff-Appellee,
v.
Aline D. LOVE, Defendant-Appellant.
No. 87-1045.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
*1279 Harry Hammill, Alexandria, for plaintiff/appellee.
J. Marc Lampert, Alexandria, for defendant/appellant.
Before GUIDRY, FORET and KNOLL, JJ.
FORET, Judge.
Aline Denise Love appeals from a judgment awarding joint custody of her minor child, Jmesha Wanise Love, to herself and appellee, Gail M. Love. Aline Love was granted liberal visitation rights while Gail, the minor child's paternal aunt, was awarded physical custody of the child.
By this appeal, Aline urges that Gail did not carry her burden of proving that an award of custody to the natural mother would be detrimental to the child and, as such, the judgment of the trial court should be reversed and custody of Jmesha be restored to her mother.[1] We agree and reverse.

FACTS
Jmesha was born January 3, 1977, issue of the marriage of appellant, Aline, and Joseph Love, who lived together in California until the death of Joseph in 1984. After the death of Joseph, Gail Love, the paternal aunt (Joseph's sister), requested that Aline allow Jmesha to come to Louisiana. In April of 1986, Aline brought Jmesha to Louisiana to stay with Gail on a temporary basis. Aline transferred Jmesha's Social Security benefit in the amount of $454 per month to Gail for Jmesha's support. Aline was in continuous contact with Jmesha by telephone during which time Jmesha assured her mother that she was happy. Additionally, Aline visited Jmesha several times during the year between April, 1986 and April of 1987, when her finances would permit.
The arrangement satisfied the parties until April of 1987, when Aline called Gail and informed her that she wanted to come get Jmesha. At this time Gail filed a rule for change of custody and obtained an ex parte order of temporary custody pending a hearing date. In response to Gail's petition for custody, Aline reconvened, praying that Jmesha's physical custody be restored to her, together with a prayer for the issuance of a writ of habeas corpus.
At the July, 1987 hearing, the evidence disclosed that Jmesha had wanted to go to California to see her mother during the summer of 1986 but was afraid to travel by plane alone. Additionally, Aline introduced a note given to her from Jmesha around Thanksgiving of 1986, wherein Jmesha stated that she wanted to go with her mother but Gail would not let her go. (See attached Appendix No. 1.) Aline testified that she spoke to Jmesha after Thanksgiving regarding this note, at which time Jmesha expressed a desire to go home and be with her mother in California. Aline was not financially able to send for Jmesha at that time.
*1280 During the period of time between Aline's request for the return of her daughter in April of 1987 and the custody hearing in July of 1987, communications between mother and daughter were seriously curtailed. Aline testified that Gail would not allow her to talk to Jmesha and that Gail used an answering machine and would not return her calls. Gail testified that she did not discourage Jmesha from contacting her mother but that they had experienced difficulty reaching Aline. Regardless of the disputed testimony, it is undisputed that Aline had not had the opportunity to communicate freely with her daughter since she informed Jmesha's aunt that she intended to bring Jmesha back to California.

ISSUES
Aline urges the following assignments of error through this appeal:
(1) The trial court erred in awarding custody to a non-parent as against the parent without any showing or finding of "detriment" in awarding custody to the parent or showing of unfitness on the part of that parent.
(2) The trial court erred in failing to hold petitioner-appellee to the mandated burden of proof of "compelling reasons" to deny Jmesha's parent her custody over a non-parent litigant in this, the "initial custodial contest."
(3) The trial court erred in awarding "joint custodian" status to a non-parent.
Assignments of error 1 and 2 are related and will be discussed together. Insofar as we agree with appellant's assignments of error and reverse accordingly, any discussion regarding the propriety of the trial court's award of joint custody to a non-parent is pretermitted.
This Court has had before it the issue of the correct standard to be utilized in a custody dispute between a parent and a non-parent on several occasions. As we noted in LaPointe v. Menard, 412 So.2d 223, 226 (La.App. 3 Cir.1982):
"It is well settled in our jurisprudence that a parent has a paramount right to custody of his or her child and may be deprived of such right only for compelling reasons. In accordance with this principle, it is well recognized that when a parent competes with non-parents of the child, the parent's right to custody must be recognized unless it be established by convincing proof that he or she is unfit or has forfeited the parental right of custody by action or omission" (citations omitted.)
This strict standard of proof required before depriving a natural parent of the custody of his or her child is necessary due to the paramount importance and uniqueness inherent in the parent-child relationship.
A non-parent's burden of proof in a case such as this goes beyond a mere affirmative finding that the best interest of the child would be served by placing custody in the non-parent. As has been codified in La.C.C. art. 146(B), the burden is on the non-parent to prove that a grant of custody to the parent would be detrimental to the child. La.C.C. art. 146(B) reads as follows:
"B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings."
This Court, in Batiste v. Guillory, 479 So.2d 1044, 1048 (La.App. 3 Cir.1985), explained the proper standard to be utilized in determining custody between a parent and non-parent, as follows:
"Under La.C.C. Art. 146, the burden is on the non-parent to prove that a grant of custody to the parent would be detrimental to the child and the award of custody to the non-parent is required to serve the best interest of the child.
There are various ways to express the standard that `custody to a parent would be detrimental to the child.' In the case of State In The Matter of Williams, 447 *1281 So.2d 1211 (La.App. 5th Cir.1984), writ denied, 449 So.2d 1357, the court said, in regard to this standard, that `convincing proof must be established that the parent is unfit or has forfeited the parental right to custody by action or omission.' (Emphasis ours).
Black's Law Dictionary 406 (5th Ed. 1979) defines detriment as `any loss or harm suffered in person or property.' Thus, the applicable standard could reasonably be rephrased to produce a test that would require the court to determine if granting custody to the natural parent would be harmful to the child."
Recently, in Gordy v. Langner, 502 So. 2d 583 (La.App. 3 Cir.1987), writ denied, 503 So.2d 494 (La.1987), the non-parent's burden of proof and the proper standard to apply were discussed as follows:
"Article 146 contains a dual-pronged requirement which must be met before a parent is denied custody of the child and the child is placed in the custody of a non-parent in a contested custody dispute; the trial court must determine that an award of custody to the parent would be detrimental to the child and that the award to a non-parent is required to serve the best interests of the child. Lions v. Lions, 488 So.2d 445 (La.App. 3 Cir.1986); Berzins v. Betts, [457 So.2d 282 (La.App. 3 Cir.1984) ] supra; Boyett v. Boyett 448 So.2d 819 (La.App. 2 Cir. 1984)." Id. at page 586.
Continuing, we stated, at page 587:
"It is well settled jurisprudence that in a custody contest between an parent and a non-parent, the parent enjoys a paramount right to custody of the child as against a non-parent. Only where `compelling reasons' have been proven by the non-parent should the parent be deprived of custody. Guidry v. Guidry, 441 So. 2d 384 (La.App. 5 Cir.1983). The burden of proof of any of the `compelling reasons' must be carried by the non-parent at the initial custodial contest between them. However, at a subsequent hearing to change custody brought by the natural parent previously deemed unfit, the burden of proof should rest on that natural parent to demonstrate that he or she had rehabilitated and that facts which gave rise to him or her being deprived of custody at the initial hearing no longer exist. Guidry v. Guidry, supra." (emphasis added)
The trial court, in its reasons for judgment, stated that, "[t]he overriding,... consideration that the court ... is bound to follow is what is in the best interest of the child?" After a conference with Jmesha, the trial judge continued by stating that, "[s]he's going to do fine wherever she is." Additionally, the trial judge clearly found that Jmesha's mother did not abandon the child nor intend that Jmesha would stay with her Aunt Gail on anything more than a temporary basis. In awarding joint custody to the mother, the trial judge stated that, "I'd like for her to have an input into ... anything involving the child's best interest, health, welfare, educational problems, anything like that. I think ... she should be consulted." Additionally, the mother was granted physical custody of Jmesha during the summer months of July and August.
The trial court's reasons clearly do not state any finding that an award of custody to the mother would be detrimental to Jmesha. Neither do these reasons state any compelling reason why Aline should be deprived of the right to her daughter.
Our own review of the evidence reveals that Aline has traveled a rough road since the death of her husband in 1984.[2] Initially, we note that Aline has always possessed legal custody of Jmesha. Therefore, this is an initial custody dispute. The record reflects that Aline has an income from Social Security of $454 per month for each of her two children, in addition to $448 per month which she receives personally from Social Security. Therefore, Aline has an income of $1,356 per month; sufficient to support Jmesha and Jmesha's brother.
*1282 Additionally, Aline testified as to her living arrangements and employment prospects. She has her own apartment and has made arrangements for a larger apartment once Jmesha has returned. She also testified that she has several potential job opportunities available to her once she is no longer encumbered with the necessity of traveling across the country to regain physical custody of her daughter.
We do note that the trial judge had the benefit of a confidential interview with Jmesha. The trial court's reasons for judgment are silent as to any stated preference of Jmesha as to where and with whom she would like to live. Insofar as the presence of counsel was waived and no record was made of the trial court's interview with Jmesha, we are not privy to the contents of this interview and Jmesha's preference, if any, is not an available factor which we may consider in our review. See Dykes v. Dykes, 488 So.2d 368, 371 (La.App. 3 Cir. 1986), writ denied, 489 So.2d 1278 (La. 1986). Under these circumstances, we find that the trial judge clearly erred in applying only the "best interest" test in its determination of an initial custody dispute. The "best interest test", standing alone, is an insufficient standard under the requirements of La.C.C. art. 146.
We do not find that Gail Love has carried the burden of proving any compelling reason why Aline Love should not retain legal custody of her daughter, Jmesha, and why Jmesha should not be returned to the physical custody of her mother. Given the trial court's finding that Jmesha "will be fine wherever she lives," and the trial court's ruling that Aline should have complete physical custody of her daughter two months a year in addition to being involved in all major decisions, we find that there has been no showing that a grant of custody to the natural parent would be harmful to the child.

DECREE
For the above and foregoing reasons, we reverse the judgment of the trial court. Aline Denise Love shall retain legal custody of the minor child, Jmesha W. Love. Physical custody of Jmesha W. Love will be restored to her natural mother, Aline Denise Love. The Social Security benefits previously assigned to Gail M. Love belonging to Jmesha W. Love shall be reassigned to her mother, Aline D. Love, as Jmesha's natural tutor. Any funds retained by Gail M. Love accruing from past Social Security benefits belonging to Jmesha W. Love shall be delivered to Aline.
Costs at the trial level and on appeal are assessed to Gail M. Love.
REVERSED AND RENDERED.
*1283 
NOTES
[1] Appellee, Gail M. Love, has not submitted a brief on this appeal.
[2] This Court has also noted that this hearing regarding the change of custody was held on the same day as Aline's mother's funeral.