662 So.2d 169 (1995)
In re CUSTODY OF the Minors Anita Lynn LANDRY, Jamie Marie Landry, and Danielle Eda Landry.
No. 95 CA 0141.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
Michael LeJeune, Baton Rouge, for Kenneth Craig Landry.
Rick Singer, Hammond, for Margie Odet Wilson.
*170 Carolyn Lahr Ott, Denham Springs, Frank Ferrara, Walker, for Des Landry.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
GONZALES, Judge.
This case involves a dispute over the custody of three minor children. The mother of the children, Margie Odet Wilson, and the father of the children, Kenneth Craig Landry, were not married, however, they lived together for over ten years.
Mr. Landry filed a petition for temporary custody on April 11, 1994, alleging that on March 17, 1994, Ms. Wilson abandoned the parties' domicile in Livingston Parish, leaving the minor children with Mr. Landry and refusing to return. By judgment dated April 11, 1994, the trial court awarded Mr. Landry temporary custody of the children.
Thereafter, by stipulation dated June 13, 1994, Mr. Landry and Ms. Wilson agreed that, prior to the trial of the rule nisi, the children would live with Mr. Landry temporarily, with Ms. Wilson to have visitation every other weekend.
On November 4, 1994, Ms. Wilson filed a rule for sole custody, child support, psychological evaluation of Mr. Landry, and for contempt. A hearing was held on November 15, 1994. After evidence was presented, the trial court stated that it would continue a joint custody plan, changing the domiciliary parent to Ms. Wilson, with Mr. Landry to have liberal visitation. The trial court then set child support at $300 per month. Mr. Landry began to argue with the court about the designation of Ms. Wilson as the custodial parent, and the trial court found Mr. Landry in contempt and sentenced him to a weekend in jail. The trial court then instructed Ms. Wilson's attorney to prepare the judgment.
At that point in the hearing, Mrs. Desdemona Landry, the children's paternal grandmother, (who was not a party to the proceedings) began to address the court. She stated that she and her husband would like to have custody of the children and could provide a good home for the children. The following discussion took place:
BY THE COURT:
It would be easy for me to say, that that is too late, your offer I am talking about, because I have already ruled. But the law dictates that I make a decision as to what is in the best interest of the children.
BY MRS. LANDRY:
That is our concern.
BY THE COURT:
I have not considered, because no evidence was put forth as an alternative placement with you. As I have indicated on the record, I had concerns about Ms. Wilson, and if it had not been for Mr. Landry's temper problem, I would not have removed the children from his house.
BY MRS. LANDRY:
Your honor
BY THE COURT:
Based uponis it Mrs. Landry?
BY MRS. LANDRY:
Yes.
BY THE COURT:
What I am inclined to do is leave the case open at this time for additionalI will vacate my earlier ruling. My findings still apply. I have some questions about Ms. Wilson. I have some questions about Mr. Landry and when I weighed between the two of them I believed and still do, that Mr. Landry's problems with his anger are such that it would not be appropriate for the children to continue to reside with him as the domiciliary parent.
The trial court then vacated its previous ruling and continued the stipulated plan for visitation (with Mr. Landry as the domiciliary parent and Ms. Wilson to have visitation every other weekend) until a hearing set for December 5, 1994.
At the close of the December 5, 1994 hearing, Ms. Wilson made a motion for involuntary dismissal of Mrs. Landry's request for custody, which motion was denied by the trial court. The trial court then awarded provisional custody to Mrs. Landry, with reasonable visitation to Ms. Wilson and Mr. *171 Landry. The judgment was set for review on June 19, 1995.[1]
Ms. Wilson is appealing and makes the following assignments of error:
1. The trial court erred as a matter of law in awarding custody of the minor children to a nonparent.
2. The trial court erred in denying Ms. Wilson's motion for involuntary dismissal at the close of the nonparent's case.
3. The trial court erred in receiving unsworn testimony from a nonparty and upon such consideration, vacating its award of custody to the childrens' natural mother.
4. The trial court erred in deviating from the Louisiana Child Support Guidelines and awarding a lower amount of child support to Ms. Wilson than as set forth therein.
5. The trial court erred in refusing to accept hearsay testimony regarding the minor children in favor of interviewing the children in-chambers, failing to make a record of the interviews, and failing to have counsel present for all three interviews.

ASSIGNMENTS OF ERROR NO. 1 AND 2 THE CUSTODY AWARD TO A NON-PARENT AND THE MOTION FOR INVOLUNTARY DISMISSAL
Louisiana Civil Code article 133 provides:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any person able to provide an adequate and stable environment.
Comments to La.C.C. art. 133 provide in pertinent part:
(a) This Article reproduces the relevant portions of the source provisions, former Civil Code Article 131(A) & (B) (1992) without substantial change. The redundant dual test for divestiture of parental custody found in the source article has been replaced with a similar, but briefer, version.
(b) The requirement of proof that parental custody would result in "substantial harm" to the child that is stated in this Article represents a change in the terminology of the test for divestiture of parental custody. The new language, which is not entirely new to Louisiana law (Pittman v. Jones, 559 So.2d 990, 993 (La.App. 4th Cir.1990)); In the Matter of Stewart, 602 So.2d 212, 214 (La.App. 3d Cir.1992), has been adopted because it represents an efficient means of giving effect to a parent's paramount right to custody of his child as against any nonparent. The primacy of that parental right was recognized by the Louisiana jurisprudence long before it was given effect by the legislature in 1982. See prior C.C.Art. 146 as amended by 1982 La.Acts, No. 307; Wood v. Beard, 290 So.2d 675 (La.1974). Prior to the 1982 introduction of the two-part statutory test that parental custody be shown to be "detrimental" to the child and that divestiture be "required to serve the best interest of the child," the courts had followed the jurisprudential formula: "the parent ... may be deprived of ... custody only when (he) has forfeited his or her right to parenthood,... is unfit, or ... if unable to provide a home for the child." Deville v. LaGrange, 388 So.2d 696, 697-98 (La. 1980). See also Jones v. Jones, 415 So.2d 300 (La.App. 2d Cir.1982).... That jurisprudential language was of course substantially different from the statutory language adopted in 1982, and at least one court accordingly held that the 1982 enactment had changed the law, giving the courts "more freedom or latitude to pursue the goal of insuring that the best interest of the child is served in resolving custody disputes between parent and nonparent litigants." Boyett v. Boyett, 448 So.2d 819, 822 (La.App. 2d Cir.1984). A similar argument (although most likely to the opposite effect) could be made again under this revision, which does indeed change the terms of the relevant test significantly. However, it is clear that the heart of the parental primacy concept, the rule that a *172 nonparent always bears the burden of proof in a custody contest with a parent, was not disturbed by the prior statutory enactment, and likewise has not been affected by this revision. See Love v. Love, 536 So.2d 1278 (La.App. 3d Cir.1988): Boyett v. Boyett, supra; Deville v. LaGrange, supra.
The source for La.C.C. art. 133 is La.C.C. art. 131(B), which provided in pertinent part:
B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings.
Louisiana Civil Code article 131(B) set forth who has the burden of proof and the standard of proof in a custody contest between a parent and non-parent. That article provided that before an award of custody may be made without the consent of the parent to a non-parent, the non-parent must show that an award of custody to the parent would be detrimental to the child and that an award to the non-parent serves the best interest of the child. Mayeux v. Mayeux, 93-1603, (La. App. 3rd Cir. 6/1/94), 640 So.2d 686, 687; Love v. Love, 536 So.2d 1278, 1282 (La.App. 3rd Cir.1988).
Parents enjoy a paramount right of custody and may be deprived of that right only for compelling reasons, which must be expressly determined and supported by convincing evidence. Merritt v. Merritt, 550 So.2d 882, 889 (La.App. 2d Cir.1989).
In this case, while the trial court considered the best interest of the child, the trial court committed legal error and abused its discretion in awarding custody to a nonparent without first making the legal determination that parental custody would result in substantial harm to the children.
We note that Mr. Landry did not contest the award of custody to his mother. However, the trial court still had to make a determination that an award of custody to Ms. Wilson would be detrimental to the children before it could award custody to Mrs. Landry.
These assignments of error have merit.

ASSIGNMENT OF ERROR NO. 3 UNSWORN TESTIMONY FROM A NONPARTY
We note that, in several other cases, the courts have approved an award of child custody to a grandparent who was not a party to the suit. Roller v. Roller, 213 So.2d 161 (La.App. 3d Cir.1968); Schloegel v. Nettle, 584 So.2d 344 (La.App. 4th Cir.1991); Stuckey v. Stuckey, 276 So.2d 408 (La.App. 2d Cir.1973).
However, we agree with Ms. Wilson that the trial court erred in allowing unsworn testimony by Mrs. Landry at the November 15, 1994 hearing. Because Mrs. Landry was not sworn in as a witness, but merely carried on a conversation with the trial court at the close of the hearing, this unsworn "testimony" was presented in a non-adversarial manner, with no opportunity for Ms. Wilson to conduct a cross examination.[2] This was a clear violation of La.C.E. art. 603. Louisiana Code of Civil Procedure article 603 provides:
Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so.
The judge's failure to sustain Ms. Wilson's objection on this point was clear error, and the only issue is for us to decide whether or not "a substantial right of the party is affected" under La.C.E. art. 103. As stated in Kaltenbach v. Breaux, 690 F.Supp. 1551, 1556 (W.D.La.1988):

*173 The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967); Jenkins v. McKeithen, 395 U.S. 411, 428-429, 89 S.Ct. 1843, 1852-1853, 23 L.Ed.2d 404 (1969); Morrissey v. Brewer, 408 U.S. 471, 488-489, 92 S.Ct. 2593, 2603-2604, 33 L.Ed.2d 484 (1972). These rights are among the minimum essentials of a fair trial:
A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defensea right to his day in courtare basic in our system of jurisprudence; and these rights include, at a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).
We find that this error affected a substantial right of Ms. Wilson's under La.C.E. art. 103. This constitutional violation additionally affected the rights of the parties in that the judge predicated his ruling to vacate his earlier judgment upon this constitutionally prohibited "testimony."
This assignment of error has merit.

ASSIGNMENT OF ERROR NO. 4 THE CHILD SUPPORT AWARD TO MS. WILSON
This assignment of error is moot because the child support award to Ms. Wilson, along with the award of custody to Ms. Wilson, was vacated by the trial court.

ASSIGNMENT OF ERROR NO. 5 THE CHILDREN'S INTERVIEWS IN CHAMBERS
Ms. Wilson argues that the trial court erred in refusing to accept hearsay evidence about the children in favor of interviewing the children in chambers. We disagree. The trial court correctly refused to accept hearsay evidence about the children and instead interviewed the children in chambers. However, the court failed to follow the guidelines cited with approval by this court in Diggs v. Tyler, 525 So.2d 1263, 1265-66 (La. App. 1st Cir.1988), for taking the testimony of children out of the presence of a parent:

[T]he interview must be conducted in chambers outside of the presence of the parents, but in the presence of their attorneys, with a record being made by the court reporter. The judge shall first determine his competency as "a person of proper understanding" by interrogating the child with appropriate questions. The attorneys shall be allowed to participate in the competency examination by asking questions and registering appropriate but only necessary objections. If the judge determines that the child is not a competent witness as outlined above, he shall immediately terminate the interview. (Emphasis added.)
See also Dykes v. Dykes, 488 So.2d 368 (La.App. 3rd Cir.), writ denied, 489 So.2d 1278 (La.1986); Comment, Child Custody: The Judicial Interview of the Child, 47 La.L.Rev. 559 (1987). Accordingly, we hold that a trial judge may interview a child in chambers so that the child can testify freely and without intimidation from his or her parents, if these guidelines are met. Osborne v. McCoy, 485 So.2d 150 (La.App. 2nd Cir.), writ denied, 488 So.2d 1027 (La.1986).
In this case, the judge interviewed the children in chambers, apparently without the attorneys present, and, although a court reporter was present, no record of the interviews was made. Ms. Wilson argues that the failure to record the children's interviews resulted in prejudice to her, because the children's statements are not available to her in this custody suit. We must agree. Apparently, the children's interviews were partially relied upon by the trial court in his original decision to give Ms. Wilson custody.
This assignment of error has merit.

DECREE
Therefore, for the foregoing reasons, the trial court judgment awarding custody to Mrs. Desdemona Landry is REVERSED; and the case is REMANDED to the trial court for an evidentiary hearing to determine *174 child custody. Costs are assessed against Mrs. Desdemona Landry.
NOTES
[1] Apparently, this review never took place due to the filing of this appeal.
[2] We note that the court, on its own motion, vacated its prior ruling and continued the hearing. However, no objection was urged to this ex proprio motu continuance and the continuance was not assigned as error.