JiLANDRIEU, Judge.
Iris Dalferes appeals the award of permanent custody of her twelve-year-old daughter, Acelon, to Iris’s sister, Lolita Dalferes. We affirm.
Beginning in April 1994, Iris’s mother, Joyce Dalferes, filed a petition for custody of Acelon, asking that temporary custody be awarded to Lolita. Iris filed a petition for custody the month after temporary custody was awarded to Lolita. After a custody trial in May 1995, at which Iris was not present, the trial judge again awarded temporary custody to Lolita. In August 1997, Iris filed another rule for custody, and Lolita filed an intervention for permanent custody. After trial on permanent custody in December 1997, the trial judge awarded permanent sole custody to Lolita. It is from this judgment that Iris appeals.
In awarding permanent custody to Lolita, the trial judge stated:
The minor child has lived with Lolita since October 1993. The testimony of Lolita and Dr. Gorman is that she’s in a stable environment, she’s doing well in school, involved in extracurricular activities. The recommendation of the court appointed expert in this matter is also that the child not be returned to the mother. After observing Iris Dalferes in court, the court can only come to the same conclusion that Dr. Gorman has that Iris Dalferes is in need of some type of medical treatment. She has no clear plan for rearing the minor child. Her answers were quite evasive concerning her medical ^treatment, other than that she is suffering from post traumatic stress syndrome and taking medication which elevates her mood when she’s depressed.
La. Civ.Code art. 133 governs custody disputes between parents and non-parents. Article 133 provides:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
A trial court’s custody award will not be disturbed absent an abuse of discretion.
The parties in this case agree that Lolita, as a non-parent, has the burden of proving, in accordance with La. Civ.Code art. 133, that an award of joint or sole custody to either parent would result in substantial harm to the child. A non-parent must show that custody to a parent would be detrimental to the child and that a custody award to the non-parent is in the child’s best interest. See Kroics v. Kroics, 97-911 (La.App. 3 Cir. 2/4/98), 705 So.2d 1302, 1304. In expressing the standard that custody to a parent would be detrimental to the child, it is not necessary that the trial court use the word “detrimental.” Schloegel v. Schloegel, 584 So.2d 344 (La.App. 4th Cir.1991).
According to the trial court’s May 1995 judgment and the December 1997 trial, Acelon originally was placed in Lolita’s care because of an allegation that a man to whom Iris entrusted Acelon tried to rape the child, Iris administered a drug to Acelon that made her sleep a lot, Iris’s home was in squalid condition, and Iris was arrested and/or imprisoned.
Iris argues that Lolita presented no proof that anything negative or harmful would happen to Acelon if Iris had custody of her, and that Lolita had no knowledge of her (Iris’s) current life. Iris also argues that Lolita presented no proof regarding Acelon’s father’s current life to show why custody should not be {¡awarded to him.[1] In sum, Iris *807 argues that the evidence did not constitute clear and convincing proof of substantial harm, which is required for a non-parent to take custody away from a parent.
Iris claims that she established at trial that she is competent. She claims to be very intelligent and capable of working; she claims to have a place to live which has food, electricity, a telephone, and a separate room for Acelon; she claims she does not take drugs; and she argues that there is no proceeding seeking to interdict her, nor has the government seen fit to take Acelon away from her. We find, however, inadequate support in the record for most of the facts listed that are germane to the instant custody dispute.
Iris’s testimony at the hearing was evasive at best. Inevitably, some of Iris’s testimony was untruthful, because it contained so many contradictions. For example, it is impossible to determine from Iris’s testimony where she lives or works, with whom she lives, or whether she has a ear. The record does show that Iris was evicted several times recently and resided in a battered women’s shelter at the time she sought custody of Acelon. She refused to answer interrogatories about her address, and only provided her current address at trial, when there was no way to verify the information.
As stated before, Iris denied that Acelon’s father, previously identified as Eddie Levert, ever existed, yet she stated her intention to seek child support from him.
The court-appointed evaluator, Dr. Cornelius Gorman, testified that Iris was not always lucid during his interview of her shortly before trial. During the interview, Dr. Gor-man said Iris displayed multiple moods, refused to answer questions and was hostile. He testified that he had difficulty completing an [tadequate interview. Significantly, Dr. Gorman said that Iris had no plan to provide for the child should she obtain custody.
Dr. Gorman also interviewed Acelon twice — once in 1995 and again shortly before the December 1997 trial. He testified that, although he had received a distressing history from Acelon regarding her life with her mother in 1995, he found her to be doing very well by his second interview with her. Dr. Gorman believes that Acelon had definitely changed for the better while in Lolita’s care. He also believes that she should remain in Lolita’s custody, at least until a psychological- evaluation could be accomplished on Iris.[2]
The trial judge could have readily concluded from Iris’s testimony that Iris was experiencing some psychological instability such that treatment would be in order. We also agree with Lolita’s contention that, at the hearing, Iris displayed no appreciation of her responsibility for ensuring Acelon’s daily attendance at school.
We find ample support in the record for a finding that placing Acelon in Iris’s custody would result in substantial harm to Acelon. Furthermore, the trial judge’s decision is also substantiated by the fact that Acelon has been living in a stable environment with Lolita for five years.
The primary consideration in custody cases is the best interest of the child. Parker v. Payton, 511 So.2d 868 (La.App. 4th Cir.1987). According to Comment (a) of La. Civ.Code art. 131, the best interest consideration applies to all- custody awards. La. Civ. Code art. 131, Revision Comments-1993 (a). We can discern no reason why Aceloris best interest should not be considered. The trial court must consider all relevant factors in determining what is the child’s best interest, including those set out in La. Civ.Code art. 134.[3] Kroics, 705 So.2d at 1306. *808 ^Considering the factors outlined in Article 134 in light of the testimony presented at trial, we find that the evidence weighs heavily in favor of the award of custody to Lolita.
Overall, the parties present a strikingly different overview of the facts of this case. The transcript reveals that Lolita has presented a more accurate picture of the situation. Lolita proved by clear and convincing evidence that placing Acelon in Iris’s custody would result in substantial harm to Acelon and that it is in Acelon’s best interest to remain with Lolita. Having thoroughly reviewed the record, we conclude the trial judge did not abuse her discretion in awarding custody of Acelon to Lolita, a non-parent, rather than Iris, Aeelon's mother.

AFFIRMED.

. Lolita's response that the father has never been in the picture and that Iris has no standing to argue for custody in favor of the father is accu *807 rate. Additionally, at the hearing in the trial court, Iris denied the father's existence.

. Such an evaluation was beyond the scope of Dr. Gorman’s expertise.

. La. Civ.Code art. 134 provides the following factors:
1.The love, affection, and other emotional ties between each party and the child.
2. The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
3. The capacity and disposition of each party to provide the child with food, clothing, medical care, and other medical needs.
4. The length of time the child has lived in a stable, adequate environment, and the desir *808 ability of maintaining continuity of that environment.
5. The permanence, as a family unit, of the existing or proposed custodial home or homes.
6. The moral fitness of each party, insofar as it affects the welfare of the child.
7. The mental and physical health of each party-
8. The home, school, and community history of the child.
9. The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
10. The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
11. The distance between the respective residences of the parties.
12. The responsibility for the care and rearing of the child previously exercised by each party.