485 So.2d 150 (1986)
John Ted OSBORNE, Plaintiff-Appellee,
v.
Mary Inabnet Osborne McCOY, Defendant-Appellant.
No. 17577-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
Rehearing Denied March 27, 1986.
Writ Denied May 30, 1986.
*151 Sadye Kern Bernheim, Monroe, for defendant-appellant.
Leroy Smith, Jr., Ltd., Tallulah, for plaintiff-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Judge.
The divorced mother appeals a joint custody judgment with primary custody of the minor child being granted to the father, contending that the trial court erred in its adjudication and in certain evidentiary rulings. Finding no error or abuse of discretion, we affirm.

FACTS
The litigants were married in 1976 and had one child in 1979. Marital problems resulted in a divorce in 1980. Sole custody was awarded to the mother with visitation rights in favor of the father. In 1983, the decree was amended to provide for joint custody with the mother being the primary custodian.
In 1984, the father filed this action for sole custody or, in the alternative, joint custody founded upon the mother's alleged violations of the custody plan and her "stormy" relationship with her new spouse.
The custody plan appealed provides that the child will be domiciled with the father for ten months of the year and the mother for two months during the summertime. Every other year, the father is allowed a two-week summer vacation with the child. The non-custodial parent has visitation rights from 5:00 p.m. Friday until 6:00 p.m. Sunday on the 2nd and 4th weekends of each month. Visitation during Thanksgiving, Christmas, and Easter holidays are to be shared by the parents. The child spends Mother's Day and the mother's birthday with the mother, and Father's Day and the father's birthday with the father. Other provisions of the decree govern such things as communications, conduct of parents, access to school records, and re-location of the parents.
The trial court recognized that both parents care very much for the child and that the child preferred to stay with her mother. The court found that the environment provided by the mother was not stable because she had frequently moved, had a "stormy" relationship with her second husband, and had physically confronted her mother's family. The judge also found the mother was to be blamed that the child's "relationship with her peers is one of jealousy, selfishness, and inability to get along with other children."
Some evidence was heard that the father had a 10 percent mental disability attributable to the stress the father experienced in the Vietnam War. The court found, on the testimony of the father's expert, however, that the father was not disabled as a parent. In 1969 the father was convicted of possession of marijuana, and in 1974 was again found in possession of a small amount of marijuana. The trial court found that the father had since been rehabilitated and no longer uses drugs.
The mother's expert testified that the father acknowledged that he had slept in the same bed as the child when the child had stayed at his house. The court found that there was no evidence to show that the father acted out of the ordinary.
The trial judge concluded that the environment provided by the mother lacked stability and continuity and that it would be in the best interest of the child to live with the father who could provide a better environment.

ARGUMENT 1
The mother first argues that the trial judge erred by awarding primary custody to the father in the joint custody decree.
CC Art. 146 provides that changes in custody shall be awarded according to "the best interest of the child." This is the sole factor to be considered in determining custody. Turner v. Turner, 455 So.2d 1374 (La.1984); Black v. Black, 460 So.2d 1175 (La.App. 2d Cir.1984), writ denied. The *152 trial court mentioned the "double burden" test, now discarded in parental custody contests, but still awarded the primary custody to the father.
A finding that joint custody is in the best interest of the child does not mandate an equal sharing of physical custody. Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984). Every child custody case must be viewed on its particular circumstances. Great weight is given to a trial court's decision which will not be overturned absent the showing of an abuse of discretion. Stephenson v. Stephenson, 404 So.2d 963 (La.1981); Cole v. Cole, 467 So.2d 872 (La.App. 2d Cir.1985); Hickman, supra.
CC Art. 146(D) states that an award of physical custody must be made by a consideration of the factors enumerated in CC Art. 146(C)(2).[1] Our review of the record in light of the Art. 146(C)(2) factors reveals the following:
1. Both parents undoubtedly love their child. The child has stronger emotional ties with the mother because of the prior primary custody of the mother.
2. The mother and father are not of the same religion. Because of geographical separation the child would not be able to attend the same school even with an equal division of custody. Continuity of school environment requires the child to live with one of the parents for the entire school year. The trial court found that the father could best provide this continuity for the child.
3. Both parents can provide food, clothing, and medical care.
4. The trial court specifically found that the child's environment with the mother lacked stability and continuity in the particulars stated earlier in this opinion. A change of environment would benefit the child.
5. The mother has moved several times and does not have a close or amicable relationship with her family. The father has a very close family and the trial court's finding is supported by evidence that the child would be exposed to close and loving relatives in her father's family who do not fight and who look after each other's welfare.
6. Neither parent is morally unfit.
7. The father's limited mental disability will not affect his responsibilities toward the child.
8. There is no evidence to indicate an unfavorable home, school, or community record of the child.
9. The child's preference to live with her mother was noted.
10. There was conflicting evidence as to whether each parent encouraged the child to be close to the other.
11. The mother resides in Slidell, in southeast Louisiana, while the father resides in Tallulah, in northeast Louisiana.
*153 12. The mother's frequent moves and her poor relationship with her second husband have not provided the child with desired stability and continuity.
We find no abuse of discretion in these findings.

ARGUMENT 2
The mother next argues that the trial judge erred by failing to have the child's in camera testimony recorded so that a complete record could be brought before this court on appeal. She asks that the case be remanded for an inclusion of the child's testimony.
Because CC Art. 146 directs a court to consider "the reasonable preference of the child," a trial judge should interview the child in chambers so that the child could testify freely and without intimidation from his or her parents. Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5th Cir. 1985), writ denied. That case stated that when a trial judge holds an in camera interrogation of a child, it should be conducted outside the presence of the parents, but in the presence of the attorneys and a court reporter who shall record the child's testimony, and that the attending attorneys may question only the child's competency.
Watermeier does not require a remand in this case. The child's preference to live with her mother is strongly "in the mother's favor." Since the purpose of the in camera interrogation is to determine "the reasonable preference of the child," we find no prejudice to the mother by the absence of a transcript in this respect. The court's finding could not be more unequivocally and strongly stated and a remand could produce no greater statement of the child's preference.

ARGUMENT 3
The mother also argues that the trial judge erred by allowing Ms. Gustafson, the father's sister, to give her "opinion" as to the child's peer relationships because she was not qualified as an expert witness or a health care professional within the meaning of CC Art. 146(H).
Ms. Gustafson testified that she had observed delinquent juveniles in her employment for approximately 12 years and had observed her niece's behavior around other children. The mother objected that Ms. Gustafson had not been qualified as an expert. The judge overruled the objection and stated that Ms. Gustafson's 12-year background with disturbed youths qualified her to testify as to what she observed about disturbed behavior. Ms. Gustafson then proceeded to testify about her observations of the child's behavior with her peers.
This type of observation testimony is not the psychiatric examination which is contemplated by Art. 146(H).[2] LRS 15:466 provides in criminal cases that
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court. See Continental Ins. v. Intern. Harvester Co., 412 So.2d 616 (La.App. 2d Cir.1982).
Ms. Gustafson's observations were admissible. Her background of 12 years experience with disturbed youths also qualifies her to express some "conclusions" that are based on her observation of the child. The mother's objection goes to the weight *154 and not to the admissibility of her conclusions. We do not find the trial court gave undue weight to this testimony.
For the foregoing reasons, the judgment of the lower court is AFFIRMED at appellant's cost.
NOTES
[1] The factors of Art. 146(C)(2) are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
[2] In a custody or visitation proceeding, an evaluation may be ordered on the motion of either party. The evaluation shall be made by a mental health professional agreed upon by the parties or selected by the court. The court may apportion the costs of the investigation between the parties and shall order both parties and the children to submit to and cooperate in the evaluation, testing or interview by the mental health professional. The mental health professional shall provide the court and both parties with a written report. The mental health professional shall serve as the witness of the court subject to cross-examination by either party. For the purposes of this Article, "mental health professional" means a psychiatrist or a person who possesses a Master's degree in counseling, social work, psychology, or marriage and family counseling.