HALL, Chief Judge.
Plaintiff, Caleb S. Martin, appeals a judgment finding his former spouse, Betty Sea-bolt Martin, free from fault in causing the breakup of the marriage and awarding her $1,000.00 in permanent alimony. We affirm.
Initially, plaintiff filed a petition for separation alleging abandonment. By supplemental petition, he prayed for divorce based on adultery, and alternatively, for separation based upon cruel treatment. Mrs. Martin denied being at fault in causing the breakup of the marriage, and through reconventional demand prayed for separation based upon cruel treatment and abandonment. Further, she prayed for permanent alimony. A hearing was conducted to determine whether Mrs. Martin was at fault or entitled to alimony. The trial judge found that she was free from fault and awarded $1,000.00 per month in alimony.
On appeal, Mr. Martin contends that the trial court erred in three respects. First, he asserts that the trial court committed error in refusing to admit a tape-recorded telephone conversation between Mrs. Martin and Charlie Jones, a network sports commentator, into evidence. Secondly, he argues that the trial court erred in failing to find Mrs. Martin guilty of cruel treatment for refusing to have sexual relations with him. Lastly, he contends that the trial judge erred in failing to find that Mrs. Martin was guilty of abandonment.
TAPED CONVERSATION
By placing a “tap” on the telephone, Mr. Martin was able to record several conversations between his wife and Charlie Jones. He sought to admit one of these tapes into evidence in an effort to show that his wife had committed adultery, or was at least, as he put it, “having a telephone romance.” The trial judge refused to admit the tape into evidence relying on LSA-R.S. INIBOT.[1]
Without deciding whether the trial judge erred in refusing to admit the tape into evidence, we conclude that Mr. Martin was not prejudiced by its exclusion from evidence. While Mrs. Martin denied having an affair with Charlie Jones, she admitted to having telephone conversations with him. Through cross-examination, the substance of at least one of the conversations was revealed in court. Mrs. Martin explained that she and Charlie Jones were long-time friends from the same home town.
Mr. Martin produced no evidence tending to establish that Mrs. Martin and Mr. Jones had ever been together. After reviewing the tape, we note that the conversations do not tend to establish any illicit relationship between Mr. Jones and Mrs. Martin. Even if admitted, the tapes would not have established Mr. Martin’s claim of adultery. Therefore, this assignment of error is without merit.
CRUEL TREATMENT
Mr. Martin contends that his wife admitted at trial to refusing to have sex with him for more than 10 years. He argues that her constant refusal of conjugal relations amounts to cruel treatment.
Though the refusal of a spouse to engage in sexual intercourse constitutes *789 cruel treatment, the party alleging the refusal has the burden of establishing that there was a persistent and unjustified refusal to engage in such intercourse. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980). Bateman v. Larson, 452 So.2d 184 (La.App. 4th Cir.1984).
Although Mrs. Martin agreed that the parties had not shared the same bed for a number of years, she stated that it was Mr. Martin who suggested that she leave the bed. She testified that Mr. Martin was ill with the flu when he asked her not to sleep with him. She excused her absence from the bed by claiming that Mr. Martin had a severe snoring problem which kept her awake all night and that he was impotent. Mrs. Martin believed that her husband was uninterested in sex, and that he never “touched her.”
Furthermore, even though Mr. Martin stated that the parties had not engaged in sex, he never offered any evidence showing that he offered or wanted to have sex, and that Mrs. Martin persistently refused. Instead, he stated only that Mrs. Martin told him that he would have to “earn her love.”
The trial judge obviously resolved the question of credibility in favor of Mrs. Martin on this issue, and that decision will not be disturbed on appeal. Mr. Martin failed to meet his burden of proof in establishing cruel treatment, and this assignment of error is without merit.
ABANDONMENT
The party alleging abandonment must show that the other party withdrew from the matrimonial domicile, without lawful cause, and then constantly refused to return. LSA-C.C. Art. 143; Von Bechman v. Von Bechman, supra.
Mr. Martin contends that his wife left the matrimonial domicile on December 25, 1986 and has not returned since that date. Mrs. Martin agrees that she moved from the matrimonial domicile on December 25, 1986, but contends that her intent was to set up a new matrimonial domicile and not abandonment.
It appears that in 1984, Mr. Martin bought a home known as the “Gill House,” which was located near the original matrimonial domicile. He instructed Mrs. Martin to remodel the home and supplied her with the funds to do so. The parties initially agreed that when renovations were complete the “Gill House” would become their new home. Mr. Martin stated that he conditioned the move upon the original domicile being sold. Mrs. Martin stated that he did not mention this condition until well into the renovation process. Further, she stated that she prepared the old house for sale, but that Mr. Martin refused to list the house for sale. Finally, she and her children became frustrated with Mr. Martin refusing to sell the old house and moved much of the marital furniture into the “Gill House.”
She stated that she and her children attempted to coax Mr. Martin into moving into the new home, but that he refused. However, he did go by the “Gill House” daily for meals. It seems that Mrs. Martin would return from time to time to the old house to clean and cook for him there. Mrs. Martin testified that she continued to care for the needs of Mr. Martin until he filed for separation in February of 1987. She stated that Mr. Martin continued to expect her to cook and clean for him, but at this point she refused. There is some evidence in the record indicating that Mr. Martin suffers with some mental instability and has been diagnosed as a manic depressive.
Although Mrs. Martin moved the majority of the marital' furniture into the new home, it cannot be said that she did so with the intention of abandoning the marital domicile. Her hope was to establish a new domicile per the couple’s agreement. Her actions subsequent to the move certainly evidenced her desire to continue to care for Mr. Martin. He somewhat acquiesced in the move by taking his meals at the “Gill House.” It was not until Mr. Martin served her with “papers” for separation that Mrs. Martin refused to continue in her care for him. Under these circumstances, the trial judge did not err in refusing to find that Mrs. Martin was guilty of abandonment.
*790 For the foregoing reasons, the judgment of the trial court finding Mrs. Martin free from fault and awarding alimony is affirmed at appellant’s costs.
AFFIRMED.

. LSA-R.S. 15:1307:
"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be a violation of this Chapter.”