877 So.2d 1228 (2004)
Gregory BROWN, Plaintiff-Appellee
v.
Mona BROWN, Defendant-Appellant.
No. 39,060-CA.
Court of Appeal of Louisiana, Second Circuit.
July 21, 2004.
*1231 Legal Services of North Louisiana, Inc., by Sophia Dixon Brown, for Appellant.
Law Offices of Fewell-Kitchens, by Richard L. Fewell, Jr., West Monroe, for Appellee.
Before GASKINS, PEATROSS and MOORE, JJ.
MOORE, J.
This expedited appeal comes to us from the Fourth Judicial District Court, Ouachita Parish, the Honorable Jimmy N. Dimos presiding. The appellant, Mona Brown, appeals that part of the divorce judgment awarding domiciliary custody of her four minor children to her former husband, Gregory Brown, giving her visitation rights on alternating weekends and two months each summer. The judgment does not require her to pay child support. Finding no abuse of discretion or legal error, we affirm.

FACTS
Gregory and Mona Lisa Brown married the first time on August 19, 1994  her first, his second.[1] The couple lived together before getting married. Mona had two children prior to the marriage, Crystal, born June 15, 1990, four years prior to the couple's marriage, and Stephen, born December 9, 1993. Two more children were born during the marriage: Summer, born on November 13, 1995 and Michael, born on July 16, 1998. On April 9, 1998, Greg executed an acknowledgment of paternity for Crystal that was signed by Mona. However Mona testified at trial that Crystal was born 11 months before she met Greg, who was married at the time, and that DNA testing would prove that Greg is not the biological father of Crystal.
The couple divorced the first time in January of 2002. Mona, who was unemployed, gave Greg custody of the children and left the matrimonial domicile. She was ordered to pay child support, but failed to do so. Apparently during this time, she did not see the children for seven months. She eventually moved back into the home with Greg, and the couple subsequently remarried on February 14, 2003. Two weeks later, they separated and have not lived together since the separation.
*1232 On November 13, 2003, Greg filed a petition for divorce seeking primary custody and care of the children under a joint custody plan. He also prayed for exclusive use of the matrimonial domicile and child support.
Dr. E.H. Baker was appointed by the court to evaluate the children and parents. At trial Dr. Baker testified extensively regarding his examination and observations. He recommended that Mr. Brown be given domiciliary custody of the children with Mrs. Brown having appropriate visitation.
After two days of trial, the court granted a judgment of divorce in favor of Greg and awarded him primary custody of the four minor children, including Crystal, even though Mona Brown stated that she could prove the child was not his. The judgment included exclusive use of the family home. He denied Greg's prayer for child support.
In its oral reasons for judgment, the court said it was in the best interest of the children to reside with the father because he had a job and a home (i.e. a trailer belonging to the community but awarded to him by the court). Additionally, the court concluded that the children had closer emotional ties to the father, and that he offered spiritual guidance and moral fitness not offered by the mother.
Against the mother, the court found that the mother was unemployed and had no home. It also found that she "frequents with different men," that she "engaged in sexual activity on the back end of a car at a bar," that she had been involved in "adulterous affairs," that she "came home drunk while she was still married," and that she "never say [sic] any time that she was interested in these children making and attending church services."
Neither side, observed the court, had encouraged communication with the other parent.
Mona filed this appeal alleging several assignments of error.

DISCUSSION
Mona contends that the trial court erred by granting custody of her four children to Greg. The erroneous custody award, she contends, arose from several mistaken evidentiary rulings and the court's bias against her. Additionally, she alleges the court erred as a matter of law by awarding custody of Crystal to Greg using the best interest of the child standard rather than requiring Greg to show substantial harm to the child.
Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child. Evans v. Lungrin, 97-0541, (La.2/6/98), 708 So.2d 731.
In the case of a considered decree, La. C.C. art. 134 provides the relevant criteria for the evaluation. According to Article 134, the relevant factors to be considered in determining the best interest of the child may include the following:
(1) The love, affection, and other emotional ties between each party and the child;
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
(4) The length of time the child has lived in a stable, adequate environment, *1233 and the desirability of maintaining continuity of that environment;
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes;
(6) The moral fitness of each party, insofar as it affects the welfare of the child;
(7) The mental and physical health of each party;
(8) The home, school, and community history of the child;
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
(11) The distance between the respective residences of the parties; and
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in Article 134, but should decide each case on its own facts in light of those factors. Moreover, the trial court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Rogers v. Stockmon, 34,327 (La.App. 2 Cir. 11/1/00), 780 So.2d 386. Finally, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App. 2 Cir. 8/31/00), 768 So.2d 219.
Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. Washkow v. Washkow, 33,965 (La.App. 2 Cir. 8/23/00), 765 So.2d 1210; Roberie v. Roberie, 33,168 (La.App. 2 Cir. 12/8/99), 749 So.2d 849. A change from a stable environment should not be made absent a compelling reason. Roberie, supra. Generally, the determination by the trial court regarding child custody is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion. Roberie, supra; Warlick v. Warlick, 27,389 (La.App. 2 Cir. 9/29/95), 661 So.2d 706. An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion. Wilson v. Wilson, 30,445 (La.App. 2 Cir. 4/9/98), 714 So.2d 35.
In this instance, Mona alleges that several erroneous evidentiary rulings by the trial court caused it to erroneously award custody of the three younger children to Greg. These alleged errors include:
1. (A) the court permitted no testimony on the record from these three children;
(B) the court disallowed (as hearsay) testimony regarding prior statements made by the children;
(C) the court disallowed into evidence secretly recorded telephone conversations appellant made with her husband.
(D) the court refused to allow testimony of one of appellant's witnesses;
Finally, the court erred by not reviewing the transcript of the trial testimony which resulted in a discrepancy between the transcript and the court's recollection of that testimony in his oral reasons for judgment.
2. The trial court erred in granting the husband custody of the oldest child of whom he is not the biological father without finding that the appellant posed a risk of substantial harm to the child.
3. The trial judge erred by not recusing himself from the proceeding where he made several biased comments and showed great disdain for the appellant.

*1234 EVIDENTIARY RULINGS

Error No. 1(A):
By this assignment the appellant contends the trial court erred when it did not allow the three youngest children, ages 11, 10, and 8, to testify in court, nor did the court make a record of its in-camera interview, citing Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5 Cir.), writ denied, 464 So.2d 301 (La.1985), as the standard for the use of testimony of children in custody cases. That case stated that when a trial judge holds an in camera interrogation of a child, it should be conducted outside the presence of the parents, but in the presence of the attorneys and a court reporter who shall record the child's testimony, and that the attending attorneys may question only the child's competency. Other circuits have adopted this procedure. See In re Custody of Landry, 95-0141(La.App. 1 Cir. 10/6/95), 662 So.2d 169 and Weaver v. Weaver, 01-1656 (La.App. 3 Cir. 5/29/02), 824 So.2d 438.
In this instance, the trial judge interviewed these three children together in his chambers with no attorneys and only the bailiff present, and it did not record or have the interview transcribed. In his oral reasons, the trial judge acknowledged that the children stated that they would prefer to live with their mother.
The facts in this case are similar to those in Osborne v. McCoy, 485 So.2d 150 (La.App. 2 Cir.1986). In that case, a divorced mother appealed a joint custody judgment with primary custody of the minor child awarded to the father, contending that the trial court erred in its adjudication of certain evidentiary rulings. The mother argued that the trial judge erred by failing to have the child's in camera testimony recorded so that a complete record could be brought before this court on appeal. The trial judge noted in its reasons for judgment, however, that the child's preference was strongly in the mother's favor. We held that remand was not required because there was no prejudice to the mother in this case by the absence of a transcript, since the court acknowledged the child's preference was to live with the mother.
Similarly, in Weaver, supra, the court held that the trial court's error of not having its in-chambers questioning of the child in a custody modification proceeding recorded by a court reporter did not require reversal of the trial court's judgment modifying custody, since the trial court's findings were not based, in any part, on the child's testimony and there was sufficient evidence to support the judgment.
We conclude that remand is not required in this instance because Mona was not prejudiced by the court's failure to follow the Watermeier procedure. The court acknowledged that the children preferred living with their mother. However, the court based its decision to award primary custody to the father on other factors, and there is sufficient evidence on this record to support that decision.
We also note that there is no merit in appellant's argument that the testimony from the children could have shown that they felt threatened prior to their session with the court-appointed psychologist, Dr. Baker, and they could testify regarding treatment by their parents, provided that appellant or her attorney would be allowed to question the children or submit questions to the judge to ask the children. The purpose of the in-chambers interview is to determine the child's preference outside the presence of the parents. Osborne, supra. Although the attorneys may be present, their questioning is limited to determination of the child's competency. Watermeier, supra.

*1235 Error No. 1(B):

In this assignment, appellant complains that the court sustained two hearsay objections regarding statements made by the children and heard by Mrs. Stoddard, a friend of appellant, and Ms. Pittman, a YWCA children's advocate who had interviewed the children when Mona took them to a YWCA shelter. Mrs. Stoddard's hearsay testimony concerned statements by the children regarding their father and the presence of head lice that she observed on the children while visiting Mona. Although the court would not allow Mrs. Stoddard to state what the children said, Mrs. Stoddard was allowed to testify regarding Mr. Brown's use of profane language over the telephone in the presence of the children.
The court permitted Ms. Pittman to testify regarding her observations of the condition of the children; however, it would not allow her to testify regarding statements made by the children. Ms. Pittman testified that she observed that the children were terrified of their father, and the hearsay testimony was offered as proof of that assertion.
The appellant did not argue at trial or on appeal that the statements by the children were subject to a hearsay exception that would render them admissible. Accordingly, this assignment is without merit.

Error No. 1(C):
By this assignment, appellant complains that the trial court erroneously ruled that the secretly recorded telephone conversations with Greg that she made on her own telephone were illegal wiretaps. She contends that the conversations would show that Greg was unwilling to encourage a close and continuing relationship with the appellant as required by La. Civil Code article 134(10). She further contends that the tape would show that Greg used inappropriate language in the presence of the children and encouraged them to do the same.
Although Louisiana law generally prohibits the interception of wire or oral communication, an exception is made where the interceptor is a party to the communication. La. R.S. 15:1303(C)(4). State v. West, 553 So.2d 945 (La.App. 4 Cir. 11/16/89), writ denied 558 So.2d 567 (La.3/9/90). Since the calls were recorded by the victim who was a party to the conversation, they were not illegally intercepted.
Without deciding whether the trial judge erred in refusing to admit the tape into evidence, we conclude that Mona was not prejudiced by its exclusion from evidence. Martin v. Martin, 561 So.2d 787 (La.App. 2 Cir. 5/9/90). The trial court expressly found in its oral reasons for judgment that Greg, as well as Mona, did not encourage the children to communicate with the other parent. Implicit in this conclusion is a finding that neither parent encouraged a close and continuing relationship with the other parent.
Additionally, Mrs. Stoddard testified regarding a telephone conversation between Mona and her son, Michael, while the speakerphone was activated in which she overheard Greg making derogatory remarks about Mona and calling her a "whore." Since the tape recorded conversation was intended to show these same facts which were shown by Mrs. Stoddard's testimony, Mona was not prejudiced by its omission from the evidence.

Error No. 1(D):
In this assignment of error, appellant alleges that the trial court erred when it would not allow testimony from Tammy Slawson, whom appellant asserts was an expert on abuse and who had been counseling her. Appellant alleges that Ms. Slawson could testify as to whether she *1236 found appellant's allegations of abuse credible. Appellant also complained that she was not allowed to present testimony from several other witnesses to Mr. Brown's abuse and threats against her.
A trial judge's assessment of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Hargrove v. Hargrove, 29,590 (La.App. 2 Cir. 5/9/97), 694 So.2d 645, writ denied 97-1853 (La.10/31/97), 703 So.2d 24.
It is clear that the court based its decision to grant joint custody of the children and naming Greg as the domiciliary parent largely based on the testimony of Dr. Baker. The court obviously believed that the testimony sought to be offered would have little probative value.
We have reviewed the testimony and the entire record on appeal in this matter. In our view, the evidence presented creates a fairly clear picture of the positive and negative facts and circumstances of both parents in this case. It is clear that both sides have significant parental shortcomings. Nevertheless, based upon this review, we cannot say that the trial court abused its discretion in disallowing testimony from the appellant's witnesses.
Finally, appellant complains that the trial court erred by not taking the case under advisement and reviewing the trial record before ruling. Instead, the court ruled from the bench immediately after the conclusion of testimony. Specifically, appellant complains that the court misconstrued or mischaracterized the evidence in its findings regarding her lack of employment, lack of home, her willingness to take the children to church, her alleged adultery and other matters.
Our review of the record indicates that the court indeed made some misstatements regarding the testimony. For example, the court stated that Mona never stated she tried to get the children to church. In fact, Mona testified that when she and Greg were together she tried to get the family to go to church. Regarding her unemployment, however, the record shows that the court stated that Mona may have been fired due to missing funds. He did not say, as appellant argues, that the court said the reason she was not working was because she was fired due to missing funds.
We conclude that the alleged discrepancies are largely due to credibility determinations and the court's general impressions obtained from the evidence. Based on our review of the record, no abuse of discretion resulted from these discrepancies.

"BEST INTEREST" OR "SUBSTANTIAL HARM"

Error No. 2:
By this assignment, appellant contends that the trial court erred as a matter of law in granting the husband custody of the oldest child, Crystal, under the best interest of the child standard without first finding that the appellant posed a risk of substantial harm to the child.
Appellant claimed at trial that Greg was not the biological father of the 13-year old girl, Crystal, even though on April 4, 1998, she executed and concurred under oath with Greg an acknowledgment of paternity stating that Greg was the father of the child. At trial, Mona testified that she did not meet Greg until 11 months after Crystal was born and Greg was married at the time of conception. She named two other men who might have been Crystal's biological father. Greg testified that he met Mona around the time the child was conceived. No forensic evidence was offered to prove or disprove Greg's paternity. Mona claims that the court should have allowed her to prove that Greg was not the father by ordering DNA tests.
*1237 The best interest of the child is the guiding principle in all child custody litigation. La. C.C. arts. 131, 134; Street v. May, 35,589 (La.App. 2 Cir.12/5/01), 803 So.2d 312. In a conflict between a parent and a nonparent, the parent enjoys the paramount right to custody of a child and may be deprived of such right only for compelling reasons. Tennessee v. Campbell, 28,823 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274; Myles v. Moore, 36,452 (La.App. 2 Cir. 8/30/02), 827 So.2d 516.
At an initial custody contest between a parent and a nonparent, the burden of proof is on the nonparent to show that granting custody to the parent would result in substantial harm to the child, thus necessitating an award of custody to the nonparent. La. C.C. art. 133; Mills v. Wilkerson, 34,694 (La.App. 2 Cir.3/26/01), 785 So.2d 69.
Appellant's argument suffers from a serious flaw: Mona did not establish that Greg is not a parent of Crystal. The court obviously found that Greg was Crystal's parent based upon the acknowledgment of paternity executed by both Greg and Mona, Greg's own testimony on the issue, and his role as acting parent for 13 years, notwithstanding Mona's recent claim that he was not the biological father of the child. Accordingly, this custody proceeding did not involve a contest between a parent and nonparent. The "substantial harm" standard of Article 133 was not applicable.

BIAS

Error No. 3:
By this assignment, appellant alleges that the trial court was biased against her. She alleges that the trial court commented on testimony, showed obvious disdain for the appellant, and cut her case short (see error No. 1(D)). Appellant did not move to recuse the trial judge during trial. On appeal, appellant seeks reversal of the custody ruling and a judgment granting her sole custody of the four children, or alternatively, a new trial.
In support of her contention that the trial judge was biased, appellant refers to comments the court made during trial:
Regarding the fact that Mrs. Brown let Crystal have her navel pierced, the following exchange took place while counsel for Greg questioned Dr. Baker:
Q.... Is that appropriate for a child 13, 14 years old?
A. Uh, I see it happening sometimes. But I certainly don't feel like it's appropriate for a child 13 to have any bellybutton piercing.
By the Court: Is that true, Mrs. Brown?
By Mrs. Mona Brown: Yes, sir.
By the Court: You pierced your daughter's 
By Mrs. Mona Brown: No. I had her taken and professionally done.
By the Court: Hooray for you. Proceed.
Toward the close of the appellant's case, she called her daughter Crystal to testify and the following exchange occurred:
By the Court: Look, to be totally fair, that's your last witness. Call her.
By Ms. Brown: Crystal Brown.
By the Court: It's not what a good parent would do. Make a note of that. But its your case.
In addition to these incidents during trial, appellant points to the following passages from the transcript made during the trial court's oral reasons:
... She's unemployed. She had two jobs and for some unknown mysterious reason  one may have been because she was fired because of missing funds or because of her resignation resigning from her job to be with the children....

*1238 ... I believe there's closer emotional ties between the father and the children than the mother. She was absent for seven months. She is frequently with different  she frequents with different men. I mean, I just can't imagine somebody making up a story that she had sexual activity going on the back end of a car at a bar.
... I've heard a lot of divorce case[s]. Never one this bad with the activities of Mrs. Brown with different men. Adulterous affairs. I'm not through yet. The mental and physical health of each party. I think she's got serious problems.
... Whoever had custody. It's lacking. And Mrs. Brown, you accused your own witness of lying.
... Now, based on her condition I'm not going to order any child support because she doesn't have any support herself. Much less the children.
... And he's not the one that caused her to have a ring in her navel. That's just shocking to this Court. I see it happening. I see it on movies and rock movies. But, I didn't realize it happened in our community.
The appellant filed no motion to recuse the trial judge during trial and alleges as error the court's failure to recuse itself on its own motion. Louisiana Code of Civil Procedure article 151(B)(5) states:
B. A judge of any court, trial or appellate, may be recused when he:
(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
A judge can only be removed upon a finding of actual bias or prejudice; a substantial appearance of impropriety or even a mere appearance of impropriety are not causes for removing a judge. Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 00-1930 (La.App. 1 Cir. 9/28/01), 809 So.2d 1040. Adverse rulings, alone, do not show bias or prejudice requiring recusal. Earles v. Ahlstedt, 591 So.2d 741(La.App. 1 Cir.1991).
In this instance, although the comments made by the judge during testimony might be construed to appear biased, we conclude that it does not rise to the level of showing actual bias. Regarding the statements made during the court's oral reasons for judgment, the statements represent impressions and conclusions drawn from the trial judge's participation as presiding judge in the trial of the defendant. Where the alleged bias or prejudice stems from testimony and evidence presented in the proceedings, the bias or prejudice is not of an extrajudicial nature as would warrant recusal. State v. Williams, 601 So.2d 1374 (La.1992).
Accordingly, this assignment is without merit.

CONCLUSION
In a child custody case, the determination of the trial judge will not be disturbed absent a clear showing of abuse of discretion. Martin v. Dupont, 32,490 (La.App. 2 Cir.12/8/99), 748 So.2d 574. The trial judge had the opportunity to see and hear the witnesses and to evaluate their sincerity and credibility. Martin v. Dupont, supra. An appellate court is required to extend great weight to the factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Based on our review of the record, we find no manifest error in the factual conclusions of the trial court, and we conclude that the trial court did not abuse its discretion in awarding primary custody of the four children to Greg.
*1239 For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Greg was previously married to Deanna Lynn Wright from 1988 to 1993. Three children were born of that marriage. One of the children has Down's Syndrome. By agreement, Greg has primary custody of the children from that marriage.