HEATHER BLAIR
v.
BRANDON KNIGHT
No. 2007 CU 2216.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Not Designated for Publication
JAMES E. MOORMAN, III KASI BRANNAN, Covington, La, Attorney for Plaintiff/Appellant, Heather Blair Germann.
MARK A. JOLISSAINT, Slidell, La, Attorney for Defendant/Appellee, Brandon Knight.
Before: CARTER, C.J., PETTIGREW and WELCH, JJ.
CARTER, C. J.
In this custody proceeding, the mother, Heather Blair,[1] appeals a judgment of the trial court naming the father, Brandon Knight, as the domiciliary parent of their minor child.

FACTS AND PROCEDURAL HISTORY
Ms. Blair and Mr. Knight are the parents of Kimberly Taylor Knight (Taylor), who was born on September 25, 1997. Ms. Blair and Mr. Knight were never married, but lived together with Taylor until they separated before Taylor's first birthday. Thereafter, Taylor lived with her mother, with Mr. Knight exercising visitation. In April of 2000, Ms. Blair petitioned the trial court for sole custody of Taylor. Mr. Knight answered and reconvened seeking an award of joint custody. In October of 2000, prior to the scheduled hearing on Ms. Blair's rule for sole custody, the parties entered into a consent judgment wherein they agreed to share joint custody of Taylor, with Ms. Blair being the domiciliary parent.
The custody arrangement remained in place for two years. In December of 2002, an incident occurred between Ms. Blair's live-in boyfriend, Seth Barras, and Taylor, who was then five years old. According to Taylor, Mr. Barras held her down with a blanket over her head and she could not breathe. Because she would not stop crying, he then put her out of the house in the cold without a jacket. Next, Mr. Barras put Taylor into the shower with her clothes on and turned on the cold water. Ms. Blair was not home when the incident occurred.
Days later during his custodial weekend, Mr. Knight noticed broken blood vessels under Taylor's eyes and some bruising on her cheek. After hearing Taylor's account of the incident, he contacted the police and then took Taylor to the hospital. The doctor who examined Taylor stated that the marks under Taylor's eyes could have been caused by any type of straining, including strangulation. The doctor could not say, more probable than not, that the marks were the result of physical abuse.
Immediately thereafter, Mr. Knight filed an ex parte motion and order for provisional custody and rule to change custody. On December 10, 2002, the trial court granted Mr. Knight provisional custody of Taylor, with Ms. Blair having supervised visitation. A hearing on the matter was set for December 19, 2002, but was continued by the trial court. Instead, the trial court conducted a status conference with the parties' attorneys, and then issued an interim order granting Mr. Knight provisional custody of Taylor pending a hearing on the rule to modify custody. Ms. Blair was granted unsupervised visitation with the restriction that no men, other than Ms. Blair's father, be present.
After the interim order was entered, Ms. Blair and Mr. Barras (the alleged perpetrator of the abuse) were married. In April of 2003, Ms. Blair moved the court to set the rule for custody for hearing and requested that the trial court lift the restriction that her husband not be present during Taylor's visits. A hearing was set for September of 2003. Ms. Blair filed a second rule to re-set custody in July of 2003, along with a rule for contempt, alleging that Mr. Knight refused to comply with a previous court order for drug testing, and had denied her visitation. Those matters were set for hearing in September of 2003. After a status conference, the trial court issued a second interim order in August of 2003, setting forth Ms. Blair's visitation schedule and ordering that Mr. Barras not be permitted to be in Taylor's presence.
Mr. Knight supplemented and amended his rule to change custody, alleging that a significant change in circumstances occurred since the October 2000 Consent Judgment and that it was in Taylor's best interest that he be designated her sole custodian. The alleged changes in circumstances included Ms. Blair's marriage to Mr. Balms, alleged drug use by Ms. Blair, a possible suicide attempt by Ms. Blair, episodes of domestic violence between Ms. Blair and Mr. Barras, as well as Mr. Barras' arrest for fourth offense driving while intoxicated.
On September 9, 2003, the parties appeared before the trial court for a hearing. Mr. Knight was the first witness called to testify. After the completion of Mr. Knight's testimony, the trial court held a conference with the parties' attorneys. Thereafter, the trial court stated it was disturbed about the case and ordered a custody evaluation pursuant to LSA-R.S. 9:331. The trial court issued a third interim order, which was signed on September 16, 2003, appointing Diana Carroll (whom the parties agreed on) to conduct a custody evaluation. All rules were continued pending completion of the evaluation. Further, Mr. Knight retained provisional custody, with Ms. Blair being allowed specified unsupervised visitation, outside of Mr. Barras' presence.
Shortly thereafter, Ms. Blair filed a second rule for contempt, alleging that Mr. Knight denied her the visitation set forth by the court's order. The matter was set for hearing, and then continued with orders that it be reset upon completion of the custody evaluation.
Ms. Carroll issued her custody evaluation report on August 15, 2005. Ms. Carroll recommended that Ms. Blair and Mr. Knight share joint custody of Taylor, with Mr. Knight being the domiciliary parent, and Ms. Blair having unsupervised visitation.
Trial of this matter finally began on November 30, 2005. After hearing testimony over the course of two days, the trial court ordered the parties' attorneys to file post-trial memoranda, after the receipt of which the matter was taken under advisement. In August of 2006, the trial court issued written reasons for judgment concluding that Mr. Knight and Ms. Blair should share joint custody, and that Mr. Knight should be the domiciliary parent. In considering the two rules for contempt filed by Ms. Blair, the trial court found that Mr. Knight's actions showed contempt of the court's orders. However, the trial court declined to award any sanctions based on Ms. Blair's delay in seeking redress.
The trial court issued a judgment in accordance with those reasons, which it later amended to clarify the phrasing. Ms. Blair now appeals, contesting the trial court's custody determination and the trial court's failure to hold Mr. Knight in contempt of court.

DISCUSSION

Custody
Under the parties' original consent judgment, the parties shared joint custody, with Ms. Blair being the domiciliary parent. The judgment on appeal maintained joint custody, but named Mr. Knight the domiciliary parent. The time that parents with joint legal custody share with their child is more properly described as a physical custody allocation of a joint custody plan, rather than as visitation. LSA-R.S. 9:335. Physical custody is actual custody. Cedotal v. Cedotal, 05-1524 (La. App. 1 Cir. 11/4/05), 927 So.2d 433, 436. Thus, the trial court's judgment that maintained joint custody, but changed the domiciliary parent amounted to a change in custody. Ms. Blair contends the trial court erred in modifying custody to award Mr. Knight domiciliary custody, and in the alternative contends the trial court should have awarded the parties 50/50 split custody.
The primary consideration in a child custody determination is always the best interest of the child. LSA-C.C. art. 131. Every child custody case must be viewed within its own unique set of facts. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major v. Major, 02-2131 (La. App. 1 Cir. 2/14/03), 849 So.2d 547, 550.
After a considered decree of permanent custody has been rendered by a court, the proponent of the change bears a heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1196 (La. 1986); Major, 849 So.2d at 551. A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. An uncontested decree in which no evidence is presented as to the fitness of the parents is not a considered decree. Major, 849 So.2d at 551-552.
In this case, the original custody decree is a consent judgment that was entered without any evidence as to parental fitness. Therefore, the heavy burden of proof rule enunciated in Bergeron is inapplicable. See Major, 849 So.2d at 552. In its written reasons, the trial court set forth that "[a] parent who seeks a change in court ordered custody bears the burden of establishing a change in circumstances sufficient to justify the change in the custody arrangement under Bergeron v. Bergeron." We find no evidence that the trial court applied the heavy burden of proof rule enunciated in Bergeron. Moreover, the court in Bergeron did set forth an overview of the burden of proof applicable in other situations. Thus, the trial court's citation to Bergeron alone is not conclusive that the trial court held either party to the higher "Bergeron" standard.
A party seeking modification of a consent decree, whether attempting to change legal or physical custody, must prove that there was a material change of circumstances since the original custody decree was entered and that the proposed modification is in the best interest of the child. See Cedotal, 927 So.2d at 436. In this case, it was Mr. Knight who was seeking to modify the parties' consent decree. Thus, it was Mr. Knight's burden to prove a material change of circumstances since the original custody decree was entered and that the proposed modification would be in the best interest of the child.
At trial, the trial court had under consideration one rule for change of custody filed by Mr. Knight seeking sole custody and in the alternative seeking joint custody with Mr. Knight being the domiciliary parent. A second rule for custody amending and supplementing the original rule, in which Mr. Knight sought sole custody, was also under consideration. In its reasons, the trial court detailed the parties' history, including, the incident of alleged abuse of Taylor by Mr. Barras that led it to grant Mr. Knight provisional physical custody of Taylor, as well as events that occurred since Mr. Knight was granted provisional custody. In clear contemplation of Mr. Knight's rule for sole legal custody, the trial court stated it was "not convinced that there has been any change in circumstances sufficient to change the joint custody arrangement." Without making a specific finding, however, the trial court clearly found that Mr. Knight had proven a material change of circumstances since the original custody decree was entered, sufficient to change the parties' physical custody arrangement. The record overwhelmingly supports the trial court's findings.
In reaching its conclusion regarding the best interest of the child, the trial court referred to the custody evaluation performed by Ms. Carroll. On appeal, Ms. Blair contends that the trial court should have disqualified Ms. Carroll as its expert because both Mr. Knight and his wife testified that Taylor began seeing Ms. Carroll for individual therapy. Ms. Carroll explained that while the evaluation was proceeding, on occasions when problems had arisen, she had seen Taylor alone at Mr. Knight's request. Ms. Carroll characterized those sessions as "crisis intervention" rather than therapy and considered them to be part of the evaluation.
The trial court noted that it believed Ms. Carroll's sessions with Taylor to be "unusual," but denied Ms. Blair's request to disqualify Ms. Carroll, stating it was going to "give more weight to the whole when [it] looked at [Ms. Carroll's] report." A trial court's assessment of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Brown v. Brown, 39,060 (La. App. 2 Cir. 7/21/04), 877 So.2d 1228, 1236. We find no error in the trial court's decision not to disqualify Ms. Carroll.
The trial court awarded domiciliary custody to Mr. Knight. Ms. Blair challenges that award and also contends that the trial court should have awarded shared or split custody to her and Mr. Knight. To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. LSA-R.S. 9:335A(2)(b). Nonetheless, the trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. The implementation order should allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents. LSA-R.S. 9:335A(2)(a). In a decree of joint custody, the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown. LSA-R.S. 9:335B(1); Martello v. Martello, 06-0594 (La. App. 1 Cir. 3/23/07), 960 So.2d 186, 190-191.
Louisiana Civil Code article 134 requires a court to consider all relevant factors in determining the best interest of the child, which may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The determination as to the weight to be given each factor is left to the discretion of the court. Only if it can be shown that a fifty-fifty shared physical custody arrangement is, in fact, both feasible and in the best interest of the child, can such an order be implemented. If both prongs are not met, then the court shall institute a custody arrangement that apportions enough time spent by the child with each parent to assure each parent "of frequent and continuing contact" with the minor child. Stephens v. Stephens, 02-0402 (La. App. 1 Cir. 6/21/02), 822 So.2d 770, 778.
The trial court clearly considered and weighed each factor. The trial court stated it was in agreement with Ms. Carroll's evaluation, which concluded that it was in Taylor's best interest that Mr. Knight be named domiciliary parent. In reaching that conclusion, Ms. Carroll detailed each of the twelve factors set forth in LSA-C.C. art. 134, and set forth the pertinent facts gleaned from her interviews during the evaluation process. Those facts were also adduced at trial through the testimonial and documentary evidence.
The record in this matter supports the trial court's award of domiciliary custody to Mr. Knight. Ms. Blair obviously loves her child, but historically has not provided a stable environment for her. Moreover, since the parties' original custody decree, Ms. Blair experienced physical and emotional difficulties, and was arrested and pleaded nolo contendre to two counts of theft, for which she was on probation. In contrast, Mr. Knight has provided a stable and structured environment for Taylor involving her step and half siblings. Mr. Knight's family has moved homes during the pendency of the litigation, however, the record reflects that the family has adjusted to the changes. The evidence shows that Taylor benefited from the environment provided in Mr. Knight's home during the course of this litigation and was, at the time of trial, doing well in school.
On appeal, Ms. Blair argues that Mr. Knight's wife's physical and mental health raises concerns for Taylor's safety and well-being. At trial, Mrs. Knight testified that she has been diagnosed with manic depression, but was receiving no treatment and taking no medication for her condition. Mrs. Knight also explained that during the evaluation process, she suffered from a painful condition affecting her reproductive system. She was diagnosed with cancer, for which she underwent surgery. At the time of trial, Mrs. Knight's cancer was in remission.
The psychological testing that Mrs. Knight underwent during the evaluation process raised question of her mental health and it was suggested that she seek treatment. However, the evidence reasonably explained that Mrs. Knight's test results could have been affected by her physical condition, which had been resolved with the surgery. Moreover, at trial, Mrs. Knight explained that since the surgery, she felt great. The trial court obviously believed that Mrs. Knight's physical and mental health was not so strong a negative factor so as to prevent Mr. Knight from being awarded domiciliary custody. We find no error in that conclusion.
Considering the record as a whole, we find that the trial court did not abuse its discretion in awarding domiciliary custody to Mr. Knight. Moreover, the trial court did not abuse its discretion when it declined to award shared custody as suggested by Ms. Blair. Subsequent to trial of the matter, the parties met with the court's social worker and established an implementation plan that provides Ms. Blair with meaningful periods of physical custody, which will serve to foster her relationship with Ms. Blair. Considering the unique facts of this case, and Taylor's best interest, we affirm that portion of the judgment awarding Mr. Knight domiciliary custody.

Contempt
During the course of the litigation, Ms. Blair filed two rules for contempt. The first related to Mr. Knight's failure to comply with court ordered drug testing and his denial of her visitation with the child. The second related, again, to Mr. Knight denial of her visitation as set forth by the court. The trial court recognized that Mr. Knight's actions showed his contempt for its orders, but declined to award any sanctions based on Ms. Blair's delay in seeking relief. Therefore, it dismissed her rules for contempt.
Willful disobedience of any lawful judgment constitutes constructive contempt of court. LSA-C.C.P. art. 224(2). The trial court has great discretion in determining whether a party should be held in contempt for disobeying a court order, and an appellate court should reverse the trial court's decision only when it finds an abuse of that discretion. Barry v. McDaniel, 05-2455 (La. App. 1 Cir. 3/24/06), 934 So.2d 69, 73.
In its written reasons, the trial court found that Mr. Knight's refusal to permit Ms. Blair visitation according to the court's orders and his refusal to submit to drug testing as ordered by the court, showed contempt of the trial court's orders. The record supports the finding, which is not challenged on appeal. The trial court declined to punish Mr. Knight for his contempt of court, however, based on Ms. Blair's delay in filing her rules for contempt. This constitutes an abuse of the trial court's discretion.
Ms. Blair filed her first contempt rule on July 9, 2003, and alleged that she had been denied visitation since January 1, 2003. During the time that she was allegedly denied visitation, Ms. Blair changed attorneys and also, on April 1, 2003, filed a motion with the trial court to set Mr. Knight's rule for change of custody for hearing and return custody of the child to her. It was set for hearing six months later, in September of 2003. Prior to that hearing, she filed the rule for contempt.
Ms. Blair filed the second rule for contempt on October 1, 2003, and alleged that she had been denied visitation on the weekend of September 26, 2003, during which time she had planned a party for the child's birthday. There was no delay in this filing. The rule for contempt was set for hearing on November 3, 2003, but was continued on Mr. Knight's motion pending completion of the custody evaluation. Ms. Carroll did not render her report until August 15, 2005. Thereafter, the trial court conducted the trial, which included the rule for contempt. Ms. Blair did not delay in seeking redress. However, there were considerable delays in having her rule heard, which were not attributable to her.
This entire litigation has been delayed by the parties, their attorneys, in particular by the custody evaluator, and by the trial court itself. However, we find that Ms. Blair's first rule for contempt was reasonably timely. There is no question that the second rule for contempt was timely. Ms. Blair's actions do not excuse Mr. Knight's contempt of court.
A finding that a party is in contempt for refusing to obey the orders of a court is not intended to benefit the litigant alleging contempt, although the infliction of a punishment may inure to that party's benefit. The object of a contempt finding is to vindicate the dignity of the court. de Nunez v. Bartels, 97-1384 (La. App. 1 Cir. 9/9/98), 727 So.2d 463, 470. We find that the trial court abused its discretion by failing to punish Mr. Knight for his contempt. In light of the record in this matter, it imperative that Mr. Knight be punished for his contempt, in order to impress upon him the gravity of violating the court's custody orders.
The punishment that a court may impose upon a person adjudged guilty of contempt of court is provided in LSA-R.S. 13:4611. LSA-C.C.P. art. 227. When a parent has violated a visitation order, the court is authorized to: allow additional visitation to replace the visitation that was denied; order either or both parents to attend a parent education course; require either or both parents to attend counseling or mediation; require the parent who violated the order to pay the other party's court costs and reasonable attorney's fees. LSA-R.S. 13:4611(1)(e). In this matter, we find the most appropriate punishment to be ordering Mr. Knight to pay Ms. Blair's court costs and reasonable attorney's fees associated with the two rules for contempt. We are unable to determine those amounts from the record. Therefore, we reverse the trial court's judgment insofar as it dismissed Ms. Blair's rules for contempt. We remand this matter for the trial court to calculate the amount of court costs and reasonable attorney's fees associated with the two rules for contempt. The trial court is instructed to enter a judgment consistent with this opinion, setting forth the amounts Mr. Knight is to pay for his contempt of court within a reasonable time after this opinion becomes final.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed with regard to custody. That portion of the trial court's judgment that dismissed Ms. Blair's rules for contempt is reversed. This matter is remanded to the trial court with instructions that it calculate the amount of court costs and reasonable attorney's fees incurred by Ms. Blair in connection with the two rules for contempt and further that the trial court render a judgment, within a reasonable time after this opinion becomes final, ordering Mr. Knight to pay such amount. Costs of this appeal are assessed equally between Heather Blair and Brandon Knight.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] According to the appellate briefs, Ms. Blair has re-married and her surname is now Germann. We will refer to her throughout as Ms. Blair for the sake of consistency within the record.